OPINION OF THE COURT
William J. Giacomo, J.
Based on the following the motion is denied.
Factual and Procedural Background
Movants Joseph Tomlinson and Michael Gemei (hereinafter the movants) were the successful bidders on the premises known as 52 Regents Road, Warwick, New York, bidding $410,000 at a *736 foreclosure sale conducted on May 13, 2008 (the auction) under the auspices of the court-appointed Referee, Douglas Michael Jones, Esq. Movants, in compliance with the terms of sale read by Referee Jones at the auction (the terms of sale), tendered a deposit of $41,000 to the Referee after the auction was completed.
Tomlinson avers that prior to the auction he had thoroughly investigated the records of the building department, as well as the real estate listing developed by the real estate agent retained by the mortgagees, prior to bidding at the auction. He also avers that he had “driven by” the premises, but had not entered it.
Just after the auction, Tomlinson was invited into the premises by the former owner, Efrain Jiminez, and observed that the premises were in good, if not better condition than the real estate listings indicated and included many luxury upgrades. During this “tour” Tomlinson alleges that Jiminez demanded that Tomlinson pay him “$60,000 in cash ‘under the table’ or [Tomlinson] would not recognize the [house] when he received the deed.” (Tomlinson affidavit 1113.) On May 26, 2008, during a drive-by, Tomlinson noticed “what appeared to be construction material and other fixtures in the driveway and on the front lawn.” (Tomlinson affidavit 11 23.) Upon being confronted by Mr. Tomlinson accompanied by a police officer, Jiminez admitted to removing fixtures, countertops and anything else of value, including the downstairs walls.
An order to show cause to address the issue was prepared by the court-appointed Referee and presented to the court returnable on June 12, 2008. Jiminez appeared on the return date and was ordered to stop causing damage to the premises. Thereafter, on June 16, 2008, an inspection of the premises ordered by the court revealed among other destruction that: interior walls in the basement had been removed; a sauna was stripped and the electrical outlets removed; granite countertops had been removed; kitchen appliances were removed; lighting fixtures were removed; gas lines to the house were capped and electrical lines to the upper level removed; all exterior lines, piping, machinery and electrical fixtures for the in-ground pool were removed; the hot tub was destroyed; and there was general destruction of the landscaping.
The parties, sans Mr. Jiminez, then returned to court. A warrant of eviction was presented to the court, signed and thereaf *737 ter executed by the Orange County Sheriff.[1] On August 8, 2008, Mr. Tomlinson again drove by the premises and alleges that he noticed “additional damage had been done” to the premises. Mr. Tomlinson estimates that the total damage to the premises, post-auction was $150,000 (Tomlinson affidavit 11 52).
On account of the damage to the premises, movants now move pursuant to General Obligations Law § 5-1311 to either void the foreclosure sale, or for an abatement of the purchase price. In the alternative, movants seek an order voiding the foreclosure sale on the inability of the plaintiff to provide marketable title.[2]
Discussion
In New York, foreclosure sales are public auctions conducted under the auspices of a referee appointed by the court. (RPAPL 1351 [1].) When conducting the sale, the referee is acting as an extension of the court and hence is an impartial third party. The purchaser at a judicial sale is actually contracting with the court and not with the foreclosing mortgagee; therefore, the sale must be conducted in a fair and equitable manner. (Lane v Chantilly Corp., 251 NY 435 [1929].)
General Obligations Law § 5-1311, commonly known as the Uniform Vendor and Purchaser Risk Act, governs the rights and remedies between a buyer and seller of real property with regard to the risk of loss between the time of the contract and the conveyance of the real property. The statute provides in pertinent part:
“1. Any contract for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:
“a. WTien neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser: (1) if all or a material part thereof is destroyed without fault of the purchaser or is taken by eminent domain, the vendor cannot enforce the contract, and the purchaser is entitled to recover any portion of the price that he has paid; but nothing herein contained shall be deemed to deprive the vendor of any right to re *738 cover damages against the purchaser for any breach of contract by the purchaser prior to the destruction or taking; (2) if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; but there shall be, to the extent of the destruction or taking, an abatement of the purchase price.
“b. When either the legal title or the possession of the subject matter of the contract has been transferred to the purchaser, if all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he thereby entitled to recover any portion thereof that he has paid; but nothing herein contained shall be deemed to deprive the purchaser of any right to recover damages against the vendor for any breach of contract by the vendor prior to the destruction or taking.” (General Obligations Law § 5-1311 [emphasis supplied].)
While at first blush the statute would indicate an entitlement to the relief sought by the movants, the statute is clear that the “contract” between the vendor, here the court, and the vendee, here the movants, may provide otherwise, and that is just the situation presented at bar.
The “contract” at issue herein is embodied in the terms of sale read by the Referee prior to the auction.[3] (See NYCTL 1996-1 Trust v EM-ESS Petroleum Corp., 57 AD3d 304 [1st Dept 2008].) While it is true that terms of sale which vary from the judgment of foreclosure and sale are void (see Renaissance Complex Redevelopment Corp. v Renaissance Assoc., 255 AD2d 274 [1st Dept 1998]), here the terms of sale do not vary from the judgment of foreclosure executed by this court on February 15, 2008. Both the terms of sale and the judgment of foreclosure provide that the “Purchaser assumes all risk of loss or damage to the premises from the date of the auction until the date of *739 closing and thereafter.” (See judgment of foreclosure, 4th “So Ordered” para, at 6; terms of sale If 14.)
The risk of loss being properly transferred to the movants at the time of the auction, i.e., the time of “contract,” no relief via General Obligations Law § 5-1311 is available.
Moreover, movants’ other arguments are also rejected. The inclusion of the transfer of risk provision does not render the judgment of foreclosure void as against public policy nor is the result here inequitable. Our legislature found nothing inappropriate about transferring risk to a purchaser as it permitted same via the Uniform Vendor and Purchaser Risk Act. The movants had the right, indeed the obligation, to review and take the opportunity to understand the terms of sale prior to bidding on the premises.
Furthermore, there is no proof that plaintiff is unable to convey marketable title to the premises. Therefore the motion as it relates to marketable title is also denied.
Any other arguments raised by the movants but not specifically addressed herein are denied.
Finally the court will address the application of the court-appointed Referee, Douglas M. Jones, Esq., for additional fees herein in the sum of $4,570. These fees are attributed to additional work performed by the Referee, including the filing of an order to show cause, appearances before the court and other matters relating to his duties to secure the premises. Mr. Jones’ application seeking the additional fees is granted to the extent that he is granted additional fees of $3,795.
The parties shall proceed to closing which closing shall occur on or before April 10, 2009, time being of the essence.

. The Referee also made an application for additional fees, which application was held in abeyance.

. Movants also originally requested access to the premises which was granted and is now rendered moot.

. While Tomlinson alleges that he “was not sure” if the terms of sale were read, an affirmation of the Referee indicates that the terms were indeed read and that the Referee recalls Mr. Tomlinson being otherwise engaged, i.e., not paying attention, at the time of the reading. Furthermore, Tomlinson, on behalf of both movants, executed the memorandum of sale to which the terms of sale were attached.